Good morning. Good morning, Your Honors. Quay Kumunodonko on behalf of Defendant Appellant. This case is a breach of contract claim, stemming or arising from three blocks of restricted stock in the Plaintiff's Employment Agreement, specifically the sign-on 35,000 shares of restricted stock, which were classified as a sign-on stock, 180,000 shares of restricted stock, which were classified as the time-based restricted stock, and 260,000 shares of restricted stock, which were generally, or I should say, just referred to as the miscellaneous stock by the parties. And the District Court in this case granted summary judgment to the Plaintiff with respect to those three blocks of stock and also at those three blocks of stock. And it is our position that the District Court erred in two significant respects. First, the District Court erred in including the miscellaneous 260,000 shares of miscellaneous restricted stock in its damages calculation. Specifically, there was a termination clause in the Employment Agreement, which indicated that to the extent the Plaintiff was terminated without cause, all the Plaintiff would be entitled to would be the sign-on restricted stock and the time-based restricted stock. Also, with respect to the miscellaneous restricted stock, it's worth noting that Plaintiff was terminated on November 4th, 2015, and the agreement specifically states that the miscellaneous restricted stock would not vest for a year after. So the first 25 percent of the — That doesn't necessarily mean that he wouldn't be entitled to it. He just means he would be entitled to it at a future date. Yes, but at the time that he was terminated, because that termination, that termination clause in the agreement, specifically lays out what he's specifically entitled to, and it makes no mention of the — of the miscellaneous restricted stock, he should — that should not have been included in the calculation of — of the damages in this case. And with respect to the second error we believe the District Court committed was in the evaluation of — of the shares of stock at issue. Specifically, the District Court considered the actual economic conditions and performance of Solar Power's common stock in hindsight in evaluating the three blocks of — three blocks of stock in this case. And as the — as the Second Circuit has unequivocally held, and as the New York courts have also held, actual economic conditions and performance in light of hindsight are not to be a determinant factor, or not to be — What's — So was this argument made to the trial judge, this principle of New York law, before the judge did all of these calculations? Yes. And as a matter of fact, in — in our motion and lemonade papers, we set forth for the court cases in which the — admittedly, not the — not appellate courts, but the district courts have universally held — well, I shouldn't say universally, but a lot of district courts have held that a marketability discount of 30 to 35 percent should be applied to shares of restricted stock. That's a different question. The question is whether the judge was advised that it is I think that was included in our lemonade papers. I don't know if — to be — to be frank, I don't know if that specific issue necessarily arised at the district court, because at the district court proceeding, we — Well, if it didn't, and I don't think it did, then — then that's waived. Well, the reason it did not come up, or it may not have come up, Your Honor, is because, again, we specifically advised the court that in valuating the shares of stock, the district courts have held that a marketability discount of 30 to 35 percent — But those cases are cases in which there was expert opinion. Neither you nor your adversary offered expert opinion to Judge Rakoff, and didn't really help him very much in trying to figure this — this out. Well, but based on the — based on what experts in other cases had provided guidance to — to the courts and advised the courts that a starting marketability discount of 30 to 35 percent is what is appropriate in valuating shares of stock, it is our position that Judge Rakoff had guidance as to — Wouldn't that vary with how long those shares were subject to restrictions? Well, it — If you have shares that are subject to a 10-year restriction on sale, they're worth a lot less than something that can't be sold for three months. Well, right. So in that particular case, using your example of, you know, shares that are restricted for 10 years, the discount would be larger than the 30 to 35 percent. Again, here in the cases that we cited for Judge Rakoff, the starting marketability discount was referenced as 30 to 35 percent. Did Judge Rakoff enter summary judgment with respect to each of the categories of stock? Yes. And then what — after that, going forward to the bench trial, what specifically was Judge Rakoff asked to do? Judge Rakoff was based on the summary judgment decision to — to evaluate the — the — the three blocks of stock. So did you take the position before Judge Rakoff that, you know, just two but not three of these blocks of stock were, you know, validly owed your client? Other than in our summary judgment papers, no. Once the summary judgment decision was made, no. You asked him to value the whole package that he had done. Based on his decision, yes. And I would — I would just also add that this — this case is not — there are other related cases that are still pending that have identical facts. Specifically, there is another case before Judge Castell where the employment agreement is virtually identical. So I — from — from our perspective, I think it would be — it would be rather helpful to — I should also mention that there are two — two other state court proceedings, all represented by the same attorneys seated to the right of me. And I think it would be helpful to provide some guidance to the district court as to whether those miscellaneous — You're not — your client is not involved in those? I'm sorry? Neither you nor your client are involved in those? We are — we are involved in those cases. We meaning you or your client or both? Both myself and my client. Same — same parties. Same attorneys. So it — It doesn't seem like all that good an idea to have the same parties suing each other in two different lawsuits over the same thing? I — I would agree, Your Honor, but just based on the way that things turned out, two cases were filed in state court, two were — well, actually, we removed two of the cases that were filed in state court to federal court, which is how they ended up before Judge Rakoff and Judge Castell. And then two were subsequently filed in state court. But I — I think based on the court's preference for having consistency in — in results, that militates in favor of there being guidance from — from — from this court as to whether the miscellaneous stock should be — should be part of the damages in this matter. Well, you — you represent the client in — in breach. Then it became your burden to — to show the discount rate, that is to say, to show a factor in mitigation of the damages, correct? Yes. But you didn't offer an expert. I — And you really took the position that there should be no discount rate, correct? Well — And the other side said, oh, it should be 100 percent to reduce it to nothing. Judge Rakoff really didn't get any help from either one of you. Well, I — I — I would slightly disagree with that, Judge Jacobs, because — It's in the form of a question, even though it doesn't seem like one. Right. We — we — again, we did suggest to Judge Rakoff, based on the cases, specifically Waxman, which was — which collected cases, where — where it indicated that the start-in marketability rate for — or marketability discount for restricted stock is 30 to 35 percent. Now, if Plaintiff's Counsel, you know, believed that the — the marketability discount should have been less, I would argue that Plaintiff should have — should have — What's our standard of review? De novo. It's questionable. Yes, based on the — the methodology of — of — of — of the manner in which Judge Rakoff calculated the damages. Specifically, what Judge Rakoff did was look at the earliest breach date and then look at the second breach date, look at the downward trend in the price of Solar Power's common stock, and then extrapolated the — I guess what you — I'm sorry, I should know this, but — but were briefs filed on both sides with respect to re-evaluation? I mean, below. The — the only briefs that were filed with respect to the valuation were in the Motion and Lemonade Papers. So the — the short answer to your — Motion and Lemonade Papers. So before there was — the case was supposed to go to a bench trial, Plaintiff filed a Motion and Lemonade arguing that the — the damages for the three blocks of — of stock should just be calculated by looking at the date of breach, what the — what the price of Solar Power's common stock was on each date of breach, and simply do the calculation that way. And in response to that Motion and Lemonade, we responded and advised Judge Rakoff that, well, no, in calculating damages for restricted stock, there should be a marketability discount, and that is the — as other courts have held or ruled, the start-in marketability discount that has been accepted by the courts is 30 to 35 percent. And did you argue at that point that for bench trial damage purposes, that Judge Rakoff should only consider — should not consider the, you know, time — the time-sensitive, or whatever the correct term, the time-sensitive block? The miscellaneous stock, you mean? Yes. Again, no, based on the decision that had been made on summary judgment, we — we did not make the argument at that time. You've reserved rebuttal? Yes. We'll hear you then. Thank you. Good morning, Your Honors. May it please the Court, Jay Zimner for Appellee Tamer Jamil. I can't help it if the defendant failed to meet its burden at trial. Plaintiff met its burden with a preponderance of the evidence which was stipulated to at the bench trial, the price quotes or the stock quotes. It was stipulated, too, that it was going to be by the — I'm not sure what you're saying there. The evidence that we provided were stock quotes for the dates of the breach. And those were accepted by defendant as the price on that day. And at that point, the burden, as you mentioned, which is in a case synergy which was before this court in 2016, determined that if there's going to be any sort of a discount, that that burden or the uncertainty burden is on the defendant, not on the plaintiff or on the party that has suffered a breach. So in this case, we don't hear anything. I would assume you would be cross-appealing, arguing that the discount should be zero. You're right. We chose not to cross-appeal. We were satisfied with the results. And in fact, if you notice, what they're asking for with regard to miscellaneous stock of having this discount of 30 to 35 percent, Judge Rakoff's determination of the value is around 32 percent. So it falls right within the gambit of what they're asking for. So I'm not really sure why we're here, but this is their opportunity to- We're here anyway. Let's make the best of it. Speak to your opponent's point that there was a block of stock that should not have been included in the calculations. Yeah, I'm not really sure where that argument is coming from. It wasn't briefed. On the motion for summary judgment, there was liability found, and each block of stock was determined to have been owed on different dates. For Mr. Jamil, there is an April 16th date, which was the date that his contract came into being, and then the date of his termination, which was, I believe, November 3rd of 2015, where the miscellaneous stock would be provided, as well as time-based stock. There was an acceleration clause within the contract that allowed for that. We agreed with those facts. There was nothing in question until today where I'm hearing that the miscellaneous stock shouldn't have been a part of the calculation. They were always to be provided to my client. So the summary judgment founding was never subsequently challenged, wasn't challenged during the damage? Correct, Your Honor. So for that reason, I believe Judge Rakoff's decision has to be affirmed. There's no reason not to affirm his decision. Thank you. We'll hear rebuttal. Again, Your Honor, the only thing that I would add in closing, as I mentioned earlier, is based on the fact that there are other proceedings pending, and based on the court's preference for obtaining consistency in results, I think the issue of the miscellaneous stock should be- That wasn't in your statement of issues on appeal, was it? No. Thank you. Thank you both. We will reserve decision.